IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ARTHUR FERRO

       Plaintiff,

vs.                               NO.

BOARD OF COUNTY COMMISSIONERS
OF CURRY COUNTY D/B/A CURRY COUNTY
DETENTION CENTER AND
KENNETH LACEY

       Defendants.


**COMPLAINT FOR THE RECOVERY OF DAMAGES
CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS AND JURY TRIAL DEMAND**

      Plaintiff brings this complaint for damages caused by the violation of his civil and constitutional rights.  Plaintiff files this complaint under the federal Civil Rights Act, the Constitution of the United States, and New Mexico law.  In support of this complaint, plaintiff alleges the following:

## JURISDICTION AND VENUE

1.     Jurisdiction and venue are proper in the Federal District Court of New Mexico.

2.     All the parties, except Plaintiff Arthur Ferro, reside in New Mexico and the acts complained of occurred exclusively within Curry County New Mexico.

3.     Jurisdiction over the subject matter of this action is conferred by 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988, therefore this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1343 and supplemental jurisdiction over the state tort claims pursuant to 28 U.S.C. § 1367.

## PARTIES

4.  Plaintiff Arthur Ferro is an individual who resides in North Carolina.

5.  Defendant Board of County Commissioners of Curry County d/b/a Curry County
    Detention Center (CCDC) was responsible for, ran, and had complete authority over
    the CCDC.

6.  Defendant Kenneth Lacey is a detention officer employed by the CCDC.

7.  At all material times Defendant Lacey was acting in the course and scope of his
    employment at CCDC and under color of state law.

8.  Defendant Lacey is sued in his individual capacity.

## FACTUAL BACKGROUND

9.  On April 3, 2016, Arthur Ferro was arrested and booked into the CCDC, which is in
    Clovis, New Mexico.

10. At the time, Mr. Ferro was 46 years old.

11. Mr. Ferro was held at the CCDC as a pre-trial detainee.

12. Mr. Ferro was classified as "low," meaning he did not show signs of violent, serious
    disruptive, predatory, or escape behavior.

13. Mr. Ferro was placed into the alpha pod, which is the maximum-security pod of the
    CCDC.

14. The alpha pod houses inmates and detainees known to be dangerous.

15. The alpha pod houses inmates and detainees known to be vulnerable in a jail setting.

16. The CCDC knew Mr. Ferro had not been in a jail before.

17. Mr. Ferro was housed with detainees who are classified as "max," meaning they were inmates or detainees who have been identified as violent, predatory, seriously disruptive, and/or escape prone.

18. Two of those inmates classified as max and housed in alpha pod with Mr. Ferro were Jeffery Robinson and Christopher Garcia.

19. On April 8, 2016, Defendant Kenneth Lacey was posted in the alpha pod.

20. Defendant Lacey had allowed all the inmates in the bottom tire of alpha pod out for their recreation time.

21. During that time, Inmate Garcia hid in the shower.

22. Defendant Lacey then started lockdown for the lower tier around 7pm.

23. Defendant Lacey did not check each cell individually during lockdown.

24. Defendant Lacey did not check the shower area during lockdown.

25. Defendant Lacey did not discover that Inmate Garcia was not in his cell for lockdown.

26. Defendant Lacey then opened the top tier doors.

27. After opening the top tier doors, Defendant Lacey left the alpha pod.

28. Defendant Lacey did not adequately monitor the alpha pod through video or otherwise after he left.

29. The CCDC did not have adequate policies in place for monitoring pods, including the alpha pod.

30. After Defendant Lacey left alpha pod unmonitored, Inmates Garcia and Robinson went to Mr. Ferro's room.

31. Mr. Ferro was asleep at the time.

32. Inmate Garcia then went into Mr. Ferro's room and attacked him.

33. Inmate Robinson acted as the lookout, standing near Mr. Ferro's cell door.

34. Nobody working for the CCDC was monitoring the alpha pod and therefore no one at CCDC saw the attack.

35. It is clear from video of the incident that there was an attack occurring inside Mr. Ferro's cell.

36. The attack went on for over half an hour.

37. At one point during the attack Mr. Ferro escapes Inmate Garcia and makes it out of his cell.

38. Inmate Garcia then grabs Mr. Ferro by the neck and, with Inmate Robinson's assistance, drags Mr. Ferro back into the cell to continue beating him.

39. When Mr. Ferro gets out of his cell, he leans over the second-floor railing and blood can be seen pouring onto the floor below.

40. After the attack on Mr. Ferro, Inmate Garcia leaves the cell and tries to wipe up the pool of blood with his sock.

41. Inmate Garcia then takes a shower, washing off Mr. Ferro's blood.

42. Inmates Garcia and Robinson then order Mr. Ferro to take a shower.

43. Mr. Ferro stumbles to the shower and, unable to stand due to his injuries, lies on the floor next to the shower.

44. Someone in the control center noticed Mr. Ferro lying on the floor and called out for help.

45. When detention officers responded, they found Mr. Ferro gravely injured.

46. Mr. Ferro was unable to stand up, and the detention officers had to use a wheelchair to move him.

47. The attack left Mr. Ferro with broken bones, including a fractured skull, a dislocated shoulder, bruises, cuts, and broken dentures.

48. Mr. Ferro was diagnosed with a traumatic brain injury and post-traumatic stress disorder stemming from the attack.

49. Mr. Ferro was forced to recover from this incident at the CCDC in the very same cell in which he was attacked.

50. As a result of the attack, Mr. Ferro cannot sleep comfortably anymore and suffers from nightmares of the attack.

51. Mr. Ferro continued to be housed at the CCDC after the attack where he was given nothing more than over the counter pain killers during his recovery and had to continue to wear his uniform with both arms through the sleeves even though it was painful for Mr. Ferro to move his injured arms through the armholes every day.

## COUNT I: DEPRIVATION OF CIVIL RIGHTS

52. Plaintiff alleges and reasserts all prior paragraphs of this complaint as though fully set forth herein.

53. Mr. Ferro has a constitutional right to humane conditions of confinement under the Fourteenth Amendment to the United States Constitution, including ensuring his reasonable safety while in CCDC's custody.

54. This right was clearly established as of April 2016.

55. Defendant Lacey directly deprived Mr. Ferro of that right by placing him under the above conditions.

56. Defendant Lacey's actions were objectively unreasonable and deliberately indifferent to the risks caused by the unsafe conditions.

57. Mr. Ferro's conditions of confinement were a violation of his constitutional rights.

58. Defendant Lacey's actions and inactions proximately caused Mr. Ferro's damages.

## COUNT II: CUSTOM AND POLICY OF VIOLATING CIVIL RIGHTS, MUNICIPAL LIABILITY

59. Plaintiff alleges and reasserts all prior paragraphs of this complaint as though fully set forth herein.

60. CCDC had a policy of inadequate supervision of the alpha pod.

61. CCDC has a policy of inadequate lockdown procedures and training.

62. CCDC has a policy of group tier time in the alpha pod.

63. CCDC has a policy of housing vulnerable and dangerous detainees in the same pod.

64. This policy created conditions under which persons housed at the CDCC were not kept reasonably safe.

65. These conditions were the moving force behind the violation of Mr. Ferro's civil rights and his damages.

## COUNT III: STATE TORT CLAIMS NEGLIGENCE

66. Plaintiff states each of the preceding allegations as if fully stated herein.

67. The defendants negligently caused the plaintiff to be assaulted and battered by placing him in the conditions described above.

## COUNT IV:   STATE TORT CLAIMS NEGLIGENTLY OPERATING A BUILDING/EQUIPMENT

68. Plaintiff states each of the preceding allegations as if fully stated herein.

69. The defendants negligently operated alpha pod of the CCDC.

70. This negligence caused plaintiff to be assaulted and battered.

## COUNT V: VIOLATION OF STATE CONSTITUTIONAL RIGHTS

71. Plaintiff states each of the preceding allegations as if fully stated herein.

72. The plaintiff has a substantive due process right under the New Mexico Constitution to humane conditions of confinement, including ensuring his reasonable safety while in CCDC's custody.

73. The defendants deprived the plaintiff of his constitutional right to reasonable safety by placing him under the above conditions, causing his damages.

## CAUSATION

74. For all counts, there is a causal connection between defendants' policies, practices, customs, actions and inactions to plaintiff's injuries and constitutional right violations.

75. Because of all the foregoing, plaintiff has suffered damages and injuries including but not limited to physical injuries, pain and suffering, and severe psychological and emotional distress.

## DEMAND FOR JURY TRIAL

76. The Plaintiff demands a trial by jury.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs prays for judgment as follows:

    A.    Compensatory damages in a yet undetermined amount, including damages for violations of civil rights, physical injuries, pain and suffering, humiliation and emotional distress.

    B.    Punitive damages in a yet undetermined amount.

    C.    Reasonable costs and attorney's fees incurred in bringing this action.

    D.    Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

*Electronically Submitted*

/s/ Margaret Strickland
Margaret Strickland, Esq.
MCGRAW & STRICKLAND, LLC
165 West Lucero
LAS CRUCES , NM 88005
Ph:   (575) 323-1529
Fx:   (575) 680-1200
Margaret@lawfirmnm.com
*Attorney for Plaintiffs*